UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------X
IN RE JOHNSON & JOHNSON DERIVATIVE  :  Civil Action No. 10-2033 (FLW)
LITIGATION                                                           :
                                                                             :
---------------------------------------------------------------X
IN RE JOHNSON & JOHNSON FCPA              :  Civil Action No. 11-2511 (FLW)
SHAREHOLDER DERIVATIVE LITIGATION :
                                                                             :
---------------------------------------------------------------X
COPELAND V. PRINCE, *et al.*                         :  Civil Action No. 11-4992 (FLW)
                                                                             :
---------------------------------------------------------------X


**PLAINTIFF KATZ'S OBJECTION OR MOTION TO MODIFY
THE REPORT AND RECOMMENDATION OF THE SPECIAL MASTER
<u>AND RESPONSE TO PETRI OBJECTION</u>**


Gary S. Graifman
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Phone: (201) 391-7000

Jeffrey S. Abraham
Philip T. Taylor
**ABRAHAM, FRUCHTER
& TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119
Phone: (212) 279-5050

**Attorneys for Plaintiff Leslie Katz**

# TABLE OF CONTENTS

**Page**

RELEVANT PROCEDURAL HISTORY ................................................................................... ii

STANDARD OF REVIEW ........................................................................................................ 2

ARGUMENT .............................................................................................................................. 2

    A.    The Work Performed by AF&T Was Appropriate and Justified
           Metal Hip Replacement and Other Factual Updates ................................................. 3

        1.    Obtaining, Reviewing and Analyzing Documents Relating to DePuy's
               Metal Hip Replacement and Other Factual Updates .................................... 3

        2.    Reviewing Transcripts and Exhibits From Civil Trials Relating to the
               Alleged Improper Sale of Risperdal ............................................................. 5

        3.    The Books and Records Request ................................................................. 5

        4.    Work on Complaints ..................................................................................... 6

        5.    Analyzing the Special Committee Report .................................................... 8

    B.    AF&T's Billing Practices Do Not Justify the Cuts Made By the Report ............... 8

    C.    Petri's Objection to the Report Seeking Further Reductions in Demand Refused
           Counsel's Lodestar Should be Overruled ............................................................... 10

CONCLUSION ........................................................................................................................ 13

## **TABLE OF AUTHORITIES**

**Cases** **Page**

*Drazin v. Horizon Blue Cross Blue Shield of New Jersey*,
    832 F. Supp. 2d 432 (D.N.J. 2011) ...................................................................................12

*Garr v. U.S. Healthcare, Inc.*,
    22 F.3d 1274 (3d Cir. 1994)................................................................................................7

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
    995 F.2d 414 (3d Cir. 1993) ...............................................................................................6

*In re Heritage Bond Litig.*,
    No. 02 ML 1475 (DT),
    2005 U.S. Dist. LEXIS 13555 (C.D.Cal. June 10, 2005) .................................................12

*In re Johnson & Johnson Deriv. Litig.*,
    856 F. Supp. 2d 545 (D.N.J. 2011) .....................................................................................6

*In re Johnson & Johnson Derivative Litig.*,
    900 F. Supp. 2d 467 (D.N.J. 2012) .....................................................................................1

*Lindy Bros. Builders, Inc. Of Phila. v. American Radiator & Standard Sanatory Corp.*,
    487 F.2d 161 (3d Cir. 1973) ...............................................................................................8

*Pawlak v. Greenawalt*,
    713 F.2d 972 (3d Cir. 1983)................................................................................................8

*Rode* v. *Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990)..............................................................................................8

*Wade v. Colaner*,
    No. 06 Civ. 3715 (FLW),
    2010 U.S. Dist. LEXIS 138518 (D.N.J. Dec. 28, 2010) .....................................................8

**Statues and Rules**

Fed. R. Civ. P. 53(f)(3) (2013)......................................................................................................2

Plaintiff Leslie Katz ("Plaintiff"), through his undersigned counsel, respectfully submits this motion to object to, or seek modification of the findings made by Special Master Harriet Derman in a Report and Recommendation of Special Master dated June 13, 2013 (the "Report") and response to the Objection of Mark G. Petri to Special Master Report filed on July 3, 2013.

**RELEVANT PROCEDURAL HISTORY**

On October 26, 2012, this Court held a fairness hearing with respect to the proposed settlement of this action at which time the settlement was approved. *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467 (D.N.J. 2012). However, the Court did not make an award of attorneys' fees finding that "the Court requires detailed submissions that provide sufficient information from which the Court can determine whether there has been any duplication in attorney effort or whether the amounts expended were reasonable." *Id*. at 499.

On October 22, 2012, this Court appointed Judge Harriet Derman (Ret.) as the Special Master to recommend the appropriate lodestar. On November 28, 2012, an initial meeting was held in Judge Derman's office with counsel for plaintiffs in the demand futility and demand refused actions. *See* Report at 15. After that meeting, Plaintiff's Counsel provided Judge Derman with, *inter alia*, detailed time records, a narrative submission breaking down the line entries by tasks performed (the "Narrative"), and also attached as Appendix A thereto, a detailed task summary (the "Task Summary") of the discrete tasks performed by attorneys from the firms of Abraham, Fruchter & Twersky, LLP ("AF&T" or the "Firm") and Kantrowitz, Goldhamer & Graifman, P.C. ("KG&G" and collectively with AF&T "Demand Refused Counsel"). *See* Declaration of Jeffrey S. Abraham ("Abraham Decl.") Exhibits A and B. Demand Refused Counsel also provided the Special Master with two separate packages of documents including, *inter alia*, the briefs for all the motion practice in which Demand Refused Counsel was involved

and also the demand correspondence.  *See* Abraham Decl. Exhibits C and D (indexes of documents provided).

On June 13, 2013, Judge Derman issued her Report.  Among other things, Judge Derman recommended that 1,076.78 (or almost 40%) of the original 2,755.25 hours billed by AF&T be disallowed.  *See* Report Appendix IV at p.1.  Plaintiff respectfully submits that the reductions, as well as certain of the comments accompanying those findings, are unreasonable and unwarranted and, therefore, should not be adopted by this Court.

Objections to the Report are due 21 days after the Report has been filed.  *See* ECF No. 241.  However, because that date is July 4th, which was a Court holiday and July 5th was also declared a holiday in this District, this objection became due today on July 8, 2012.  *See* Fed. R. Civ. P. 6(a)(3).

## STANDARD OF REVIEW

This Court's review of any objections to the factual findings of the Report is made under a *de novo* standard.  *See* Fed. R. Civ. P. 53(f)(3) (2013).

## ARGUMENT

Although the cuts to AF&T's reported time are divided among various categories in the appendices accompanying the Report, the core themes appear to be a finding that much of the billings were excessive, vague or related to work which was unnecessary.  Plaintiff respectfully submits that the Report erred in both of these premises and the resulting reductions are unjustified.  In addition, the Petri objection seeking further cuts to the lodestar of Demand Refused Counsel lacks merit and should be overruled.

A. **The Work Performed by AF&T Was Appropriate and Justified**

The Report criticized several tasks performed by AF&T lawyers as excessive, unjustified and not adding value. Plaintiff respectfully disagrees with the Report's conclusions. The Narrative and Task Summary fully explains every activity which Demand Refused Counsel undertook in this action, including: (1) obtaining, reviewing and analyzing documents relating to DePuy's metal hip replacement and other factual updates; (2) reviewing transcripts and exhibits from the civil trials relating to the alleged improper sale of Risperdal; (3) drafting a books and records action which was not filed; and (4) working on the complaint in intervention and the *Katz* Complaint. Plaintiff believes these criticisms are not justified or, alternatively, do not mandate the level of cuts recommended by the Report.

1. **Obtaining, Reviewing and Analyzing Documents Relating to DePuy's Metal Hip Replacement and Other Factual Updates** (156.25 hours disallowed of the original 197.75 hours, *see* Exhibit F).[1] On February 22, 2012, *The New York Times*, reported on the front page of the business section that DePuy Orthopaedics ("DePuy"), a J&J subsidiary, had knowingly sold a defective hip replacement product. *The New York Times*' website contained a copy of an unredacted Food and Drug Administration ("FDA") non-approvable letter upon which much of the article was based.[2] J&J did not wish to produce any documents and only grudgingly produced a redacted version of the same FDA letter and designated the document as confidential

---

[1] Attached to the Abraham Decl. as Exhibit F is a computation of the hours deducted for each of the categories identified in this Objection.

[2] The Report criticizes the practice of billing for review of SEC filings and public news reports. Report at 47. However, since J&J is a multi-national company the securities of which are registered with the SEC, a wealth of information concerning the Company can be found in public sources. It would have been folly for counsel engaged in litigation or settlement discussions not to remain informed of and kept abreast of relevant developments.

under the terms of the parties' confidentiality agreement. After much negotiations, which at times were contentious, J&J eventually produced the exhibits from depositions taken in the DePuy product liability litigation representing the "hottest" documents from a universe of over 37 million pages produced in those actions. A review of those documents was necessary in order to determine whether there was evidence that J&J's senior executives and directors acted with knowledge or reckless disregard of their fiduciary duties to J&J in allowing DePuy to sell a dangerous product.

In connection with this task, the Report criticizes AF&T for also assigning Mr. Rozzi to the review of DePuy documents as evidence of over staffing. Report at 98. However, the documents were reviewed under a highly compressed time table in order to avoid delaying the ongoing settlement negotiations. Philip Taylor, the associate working on the J&J matter at AF&T, even with the assistance of Michael Braunstein from KG&G, could not have completed the tasks on the timetable desired by all parties who were pressing for answers in connection with ongoing settlement discussions. The practice of adding additional attorneys to complete time sensitive matters is, Plaintiff respectfully submits, an ordinary practice of most law firms.

Also, many of the documents as well as the subject matter relating to the metal hip replacement itself were highly technical and counsel also needed to analyze a fairly long industry history with respect to the development and discussion of risk factors relating to metal hip replacements. Counsel hired an expert with relevant industry experience to assist them with the task of analyzing those issues. Therefore, Plaintiff believed that retaining an industry expert to assist counsel was also reasonable and appropriate under the circumstances.

2. **Reviewing Transcripts and Exhibits From Civil Trials Relating to the Alleged Improper Sale of Risperdal** (126.25 hours disallowed of the original 188.25 hours, *see* Exhibit F). The Company's Janssen Pharmaceuticals ("Janssen") subsidiary had been sued by several states for knowingly engaging in off-label marketing of Risperdal, as was set forth in Plaintiff's Supplemental Demand Letter to J&J dated July 7, 2010. An adverse judgment had been entered against Janssen in Louisiana for $257.7 million and for $327 million in South Carolina. In addition, Janssen had been fined $1.1 billion by Arkansas and settled an action in Texas trial for $158 million after seven days of testimony. *See Katz* Complaint ¶¶156-160.

Plaintiff reviewed certain transcripts of those proceedings and key exhibits referred to in those transcripts. The purpose of that review was to determine how far up the corporate ladder the alleged improprieties traveled and, relatedly, whether there was any evidence that J&J's directors and senior executives had actual knowledge of the wrongful conduct.

3. **The Books and Records Request** (63.75 hours disallowed of the original 117 hours, *see* Exhibit F). Plaintiff prepared a 13 page complaint with 23 exhibits attached and 15 page motion for judgment requiring J&J to produce certain books and records in State court which, in many ways, is akin to a motion to compel. *See* Narrative at 3-4. The complaint was finalized but, at the last minute, AF&T learned that the New Jersey court had just denied a similar request for failure to state a proper purpose and, in particular, a failure to demonstrate that there had been any mismanagement at J&J.

Demand Refused Counsel believed that the documents it would have presented to the New Jersey State court would have cured whatever defects existed in the previously denied books and records request. However, given the procedural posture and the difficulty inherent in

- 5 -

such a procedural setting, counsel decided at that time not to proceed with filing a books and records complaint, as the State court judge would have had to distinguish its prior opinion based on the new complaint.

This Court previously suggested that making a books and records request was an appropriate action in the context of this litigation. *See* Transcript of Nov. 21, 2011 hearing at 33-34, *Katz v. Weldon, et al.*, No. 11 Civ. 4993 (FLW) (D.N.J.).[3] Therefore, it is appropriate to compensate counsel for that work even if the books and records action was never filed. *Accord Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 and 424 (3d Cir. 1993) (finding that counsel may be compensated for efforts "reasonably expended" to advance the litigation and that unused work may be included in fees where it was not "excessive, redundant or inefficient") (citations omitted). This is particularly appropriate since, the option to file a books and records action always remained open depending on how the action progressed. *Accord In re Johnson & Johnson Deriv. Litig.*, 856 F. Supp. 2d 545, 580-81 (D.N.J. 2011).

**4.** **Work on Complaints** (187.5 hours disallowed of the original 539.75 hours, *see* Exhibit F). The Report struck 187.5 hours spent working on the Complaint because Plaintiff could have copied the allegations from the complaints already on file. Report at 45, n.28. However, the *Katz* Complaint, in contrast to the Demand Futility Plaintiffs' complaint, focused on linking the alleged wrongdoing to specific members of J&J's senior management having daily responsibilities for the conduct at issue. Accordingly, the majority of the defendants named in the Katz Complaint were senior executives officers of J&J and only three outside members of the Company's board of directors ("Board") were named as defendants. *Katz* Complaint ¶¶23-35

---

[3] Counsel, at that time, informed the Court that the books and records action had never been filed. *See* Nov. 21, 2011 Tr. at 15-16.

and 38-40.  In contrast, the Demand Futility Complaint named primarily J&J Board members as defendants.  *See* Demand Futility Complaint ¶¶29-38 (*In re Johnson & Johnson Derivative Litig.*, No. 10 Civ. 2033 (FLW) (D.N.J.), ECF No. 94).

Plaintiff also sent a Freedom of Information Act ("FOIA") request to the FDA.  The FDA's response, which included the publication of documents on their website, uncovered documents demonstrating that notwithstanding the Company's McNeil Pharmaceutical ("McNeil") subsidiary's promise to the FDA in July 2008 to form a Complaint Vigilance Review Board (Katz Complaint[4] ¶¶82-83) to monitor trends in consumer complaints, those very same complaints were ignored throughout 2009 (*e.g.*, *Katz* Complaint ¶85).  In addition to Plaintiff's review of public reports, SEC filings and documents obtained through the FOIA request, Plaintiff also made use of securities analysts' reports and documents obtained from court filings in other related actions.  The Complaint also made use of facts contained in the Special Committee Report and addressed the issue of wrongful demand refusal.  All these tasks as well as the framing of the Complaint's allegations involve a "personal, nondelegable responsibility" on the part of counsel.  *Accord Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1278 (3d Cir. 1994) (attorneys have a "personal, nondelegable responsibility" to comply with Rule 11 in drafting a complaint).

In connection with Plaintiff's investigation, Mr. Taylor attended a Congressional hearing addressing J&J's phantom recall of children's Tylenol and other quality control issues at McNeil, issues which were directly alleged in the demand.  Often it is not easy to obtain copies of transcripts of such proceedings on a timely basis.  The process of obtaining transcripts and then

---

[4]    *Katz v. Weldon, et al.*, No. 11 Civ. 4993 (FLW) (D.N.J.), ECF No. 1.

reading them takes time and money as well. The decision to attend in person at the early stage of the demand process was a judgment call of counsel at a time when AF&T had no idea whether it would even obtain a leadership position in this case or whether this action would ever settle. It was an efficient evidence gather method, given that counsel would have otherwise had to order and review the transcript and ceratin nuances are gained by observing the testimony in person.

**B.     AF&T's Billing Practices Do Not Justify the Cuts Made By the Report**

The Report justifies broad categories of cuts in time to what it concludes are improper billing practices of AF&T including block billing, vagueness and routine over billing. *E.g.*, Report at 17-44. Plaintiff respectfully submits that these criticisms are not justified and incorporates by reference the combined submissions including the Narrative and Task Summary which were sufficient to guide the Special Master as to the amount of time spent of each discreet task. All that is required is "'some fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, associates.'" *Rode* v. *Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (quoting *Lindy Bros. Builders, Inc. Of Phila. v. American Radiator & Standard Sanatory Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)). However, "[i]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Wade v. Colaner*, No. 06 Civ. 3715 (FLW), 2010 U.S. Dist. LEXIS 138518, at *18 (D.N.J. Dec. 28, 2010) (quoting *Rode*, 892 F.2d at 1190). Thus, a fee petition need only be specific enough to allow the court to determine if the amount of hours spent was reasonable for the work performed. *Pawlak v. Greenawalt*, 713 F.2d

972, 978 (3d Cir. 1983).  *See also* Demand Futility Plaintiffs' Response to Report and Recommendation of Special Master.

The greatest cuts for vagueness appear in the Report striking time billed by Mr. Taylor reviewing transcripts with the Report stating that the entries are too vague to know what transcripts were being reviewed.  Report at 49.  However, to the extent there was any confusion, Plaintiff identified that time as relating to reviewing materials from the Risperdal trials.  *See* Narrative at 14; Task Summary at 16.  Similarly, the Report struck time which Mr. Taylor billed for the DePuy document review (Report, Appendix III at 12) even though the time was identified as relating to that task.  *Id.*

The Report also concludes that vagueness in billing records leads to excessiveness when work is performed on the case on successive days.  Report at 71-72.  However, much of the work was performed under time pressure and Court deadlines.  In addition, it is counsel's experience that working on successive days is actually most efficient because it obviates the need to refresh one's recollection.  The ultimate test, Plaintiff respectfully submits, of whether excessive hours were devoted to a task is looking at the total number of hours billed compared to how many hours the Court believes should have been spent on a particular task or submission.

Finally, a particularly stinging aspect of the Report concerns criticism of Mr. Abraham for over-billing by at times contrasting the time he billed with that billed by Mr. Graifman.  *E.g.*, Report at 67.  However, that difference is explained by Mr. Abraham taking the laboring oar as lead counsel in analyzing issues and prosecuting the claims.  Similarly, it is axiomatic that different lawyers spend different amounts of time preparing for Court hearings perhaps justifying some minor cuts in such time.  It is, however, not accurate to say that Mr. Abraham billed time

preparing for an argument that never took place. Report at 83. In fact, Mr. Abraham appeared before the Court, albeit briefly. *See* Transcript of July 28, 2011 hearing at 65. Although the argument turned out to be brief there were a variety of paths and questions that could have been asked by the Court. Indeed, it would be very easy to prepare for oral argument if one always knew the precise questions a court was planning on asking.

C. **Petri's Objection to the Report Seeking Further Reductions in Demand Refused Counsel's Lodestar Should be Overruled**

Petri also objects to the award of any fees relating to the time spent briefing the motion to intervene, drafting a complaint in intervention and the motion to appoint lead counsel. *See* Petri Obj. at 2. Petri attributes 1,091.65 hours having a total lodestar of $689,834.75 to these activities (Petri Obj. at 2) and then suggests that all those hours less a 17.56% allowance for time previously disallowed by the Special Master (Petri Obj. at 5) be stricken from Demand Refused Counsel's fee request for a net lodestar amount of $586,699.77. Petri's objection lacks merit and, accordingly, should be overruled.[5]

As an initial matter, Petri's calculations are incorrect. According to Plaintiff's calculations, the Report recommended disallowing: (a) 161 hours from the time billed to the motion to intervene with a total lodestar of $102,333.75; (b) 64.65 hours with a total lodestar of $35,361.25 from the lead counsel motion practice; and (c) and 83.5 hours with a total lodestar of $37,762.50 from the complaint in intervention. Therefore, the total reduction which Petri

---

[5] Petri also suggests that a lodestar multiple should not be awarded. That issue is addressed in detail in a submission being made to the Court by Demand Futility Counsel, in which Plaintiff joins.

should be seeking is 782.5 hours having a total lodestar of $428,816.75 rather than the $586,699.77 he seeks.[6]

Petri also fails to support his assertion that the time he seeks to have stricken had no impact on the final resolution of this action.  In the case of the complaint in intervention, the vast majority of the work done found its way into the final *Katz* complaint.  As described above (*see* p. 7), the *Katz* Complaint largely differed in its focus and represented a legitimate expenditure of time in formulating the claims in this action.  Therefore, even under Petri's analysis, further reductions in lodestar for that task are not warranted.

Similarly, Petri's characterization of the motion to intervene as nothing more than fighting among counsel is inaccurate.  Although that dispute was present because the motion arose in the context of a lead counsel dispute, a substantial portion of the briefing is devoted to explaining the rationale for making a demand as opposed to proceeding to the immediately filing a demand refused complaint.  *See, e.g.*, *Johnson & Johnson*, ECF No. 43 at 5-10.  Indeed, plaintiff notes that the Court administratively terminated the motion to intervene and **directed** Plaintiff to re-list the motion.  ECF No. 98.

Plaintiff also respectfully submits that the vigor with which Demand Refused Counsel pursued this litigation at all stages can not be divorced from the result ultimately achieved in this action.  Thus, the Court in appointing AF&T and KG&G as, respectively, lead and liaison counsel held that:

---

[6]    *See* Exhibit E for the underlying calculations of those amounts.  The Special Master allowed 379.45 hours (lodestar $249,447.00) for work on the intervention motion, 251.4 hours (lodestar $151,546.00) for work on the complaint in intervention and 151.65 hours (lodestar $89,511.25) for work on the motion for appointment of lead and liaison counsel.

> I do take notice that Katz's counsel diligently participated in monitoring the progress of the Special Committee's investigation of the demand made by shareholders, and, more importantly, counsel displayed a continued interest during the process when the report was drafted and, indeed, even after that report.

*See* Nov. 21, 2011 Tr. at 31.

Finally, Petri fails to cite any cases supporting his assertion that all the time expended working on a lead counsel motion is not compensable. *In re Heritage Bond Litig.*, No. 02 ML 1475 (DT), 2005 U.S. Dist. LEXIS 13555, at *85-86 (C.D.Cal. June 10, 2005), the sole case Petri cites on whether time spent on a lead plaintiff motion can form part of a fee petition, limited its holding to those counsel who were *not* appointed as lead counsel. *Id*.

*Drazin v. Horizon Blue Cross Blue Shield of New Jersey*, 832 F. Supp. 2d 432 (D.N.J. 2011), the leading case from this District upon which Petri relies, is also not on point. In *Drazin,* one of the law firms petitioning for attorneys' fees had initially opposed preliminary approval of the proposed settlement as "woefully inadequate." *Id*. at 436. The Court itself, because of the unusually abrasive relationship among counsel in that action, as part of its reference to the special master directed that time spent battling among counsel should be excluded from the final lodestar calculation. *Id*. at 443. Here, in contrast although there were disagreements among counsel at various times as to an appropriate strategy to pursue, they never reached the level of that in the *Drazin* action which appears, for a lack of a better term, to have been *sui generis*.

## CONCLUSION

Plaintiff respectfully requests that the Court not adopt the recommendations of the Special Master and overrule Petri's objection.  The Court should restore the hours of AF&T's time recommended to be deducted by the Report as identified in this Objection and not accept any of Petri's further proposed reductions.

Dated: July 8, 2012                                         Respectfully submitted,

**KANTROWITZ, GOLDHAMER
    & GRAIFMAN, P.C.**


    /s/    *Gary S. Graifman*
Gary S. Graifman
210 Summit Avenue
Montvale, NJ 07645
Phone: (201) 391-7000

**ABRAHAM, FRUCHTER
    & TWERSKY, LLP**
Jeffrey S. Abraham
Philip T. Taylor
One Penn Plaza, Suite 2805
New York, NY 10119
Phone: (212) 279-5050

**Attorneys for Plaintiff Leslie Katz**